ORIGINAL

FILED

07 MAY -4 AM 11:20

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY:_____ DEPUTY

BLECHER & COLLINS, P.C.
MAXWELL M. BLECHER (State Bar No. 26202)
E-mail: mblecher@blechercollins.com
JOHN E. ANDREWS   (State Bar No. 105336)
E-mail: jandrews@blechercollins.com
515 S. Figueroa Street, 17th Floor
Los Angeles, California 90071
Telephone:   (213) 622-4222
Facsimile:   (213) 622-1656

Attorneys for Plaintiffs
DAVID RESNICK and SKY POWER, LLC

UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID RESNICK, an individual; SKY POWER, LLC, a Nevada limited liability corporation, | CASE NO. 07 CV 0813 L (CAB) |
| | COMPLAINT FOR: |
| Plaintiffs, | 1. Anticipatory Breach of Contract; |
| vs. | 2. Specific Performance of Contract; |
| | 3. Breach of Implied Covenant of Good Faith and Fair Dealing; |
| DAVID SHEPARD, an individual; BRIAN ROBERTS, an individual; SKY WINDPOWER CORPORATION, a California corporation; and DOES 1 through 100, inclusive, | 4. Promissory Estoppel; |
| | 5. Tortious Interference With Contract; |
| | 6. Intentional Interference With Prospective Economic Advantage; |
| Defendants. | 7. Fraud in the Inducement; |
| | 8. Promissory Fraud; |
| | 9. Injunctive Relief; |
| | 10. Constructive Trust; |
| | 11. Declaratory Relief; |
| | 12. Slander Per Se. |

**JURY TRIAL DEMANDED**

BLECHER & COLLINS
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW

CASE NO. _____

Plaintiffs David Resnick and Sky Power LLC hereby claim against Defendants as follows:

## THE PARTIES

1.     Plaintiff David Resnick is, and at all relevant times was, an individual residing in the State of Oregon.

2.     Plaintiff Sky Power, LLC is, and at all relevant times was, a Nevada limited liability corporation with its principal place of business located in Las Vegas, Nevada.

3.     Defendant David Shepard is, and at all relevant times was, an individual residing in Coronado, California.

4.     Defendant Bryan Roberts is, and at all relevant times was, an individual residing in Queensland, Australia.

5.     Defendant Sky WindPower Corporation is, and at all relevant times was, a California corporation with its principal place of business located at Ramona Airport, Hangar 310, Ramona, California 92065 and its mailing address located at 35 Aruba Bend, Coronado, California 92118.

6.     Plaintiffs are currently unaware of the true names and capacities of those defendants sued herein as Does 1 through 100, inclusive.  Plaintiffs are informed and believe, and on the basis of such information and belief allege, that each of the defendants sued as a Doe herein is responsible in some way or manner for the damages suffered by Plaintiffs herein.  Plaintiffs will seek leave of this Court to amend this complaint when Plaintiffs ascertain the true names and capacities of such Doe defendants.

BLECHER & COLLINS
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW

- 1 -

*CASE NO.* _____

BLECHER & COLLINS
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW

1    **JURISDICTION AND VENUE**

2    7.    This Court has jurisdiction over this action by virtue of diversity

3    of citizenship, 28 U.S.C. §§ 1332.  The amount in controversy exceeds

4    $75,000.

5    8.    Venue is appropriate in this district by virtue of 28 U.S.C. §

6    1391(a)(2), in that a substantial portion of the events giving rise to the

7    claim occurred in this district.

8

9    **ALLEGATIONS APPLICABLE TO ALL CLAIMS**

10   **A.    Resnick's Background and Experience With Start-Up Companies**

11   9.    David Resnick is a successful entrepreneur and businessman

12   who has started up and run a number of companies during his career.

13   Resnick has been involved in highly lucrative technology, entertainment,

14   and real estate ventures, and is currently the owner and Chief Executive

15   Officer of Big Picture Films.  Among other things, Resnick has access to a

16   number of major investors throughout the country and has used his

17   business skills and access to funds to get start-up companies off the

18   ground and running as viable, operating business enterprises.

19   **B.    Resnick Learns About and Contacts SWP**

20   10.    Resnick has been interested in wind energy projects since the

21   1980s.  In March of 2006, Resnick learned about an experimental

22   technology known as the flying electrical generator ("FEG").  FEGs are an

23   alternative to conventional wind turbines erected on the ground and consist

24   of flying wind turbines, attached to rotorcrafts and tethered to the ground,

25   that hover at high altitudes to allow them to take advantage of the jet

26   stream, a powerful air current circling the globe at an altitude of between

27   15,000 to 45,000 feet.  Once the FEGs are placed in the jet stream, winds

28   of up to 100 miles per hour spin rotors and generate an electrical current

- 2 -                       *CASE NO.* _____

1  that is transmitted through the tethers to ground stations linked to the utility

2  grid.  By some estimates, one football-field sized FEG could potentially

3  generate 10 megawatts of electricity, enough to power 10,000 homes.

4      11.   In his investigation of FEG, Resnick learned about Bryan

5  Roberts, a professor of engineering at the University of Technology in

6  Sydney, Australia who has developed a FEG prototype.  Resnick also

7  learned about Sky WindPower Corporation ("SWP"), an alternative energy

8  company that teamed up with Roberts to try to commercialize his invention.

9  SWP's President is David Shepard.  Roberts is SWP's Chairman.

10      12.   In his investigation, Resnick learned that although SWP had

11  been attempting to commercialize the FEG technology for years, SWP had

12  been unable to make any progress whatsoever in doing so.  Resnick also

13  learned that the major obstacle to development of the FEG is sufficient

14  private investment, since FEG technology doesn't comfortably fit into any

15  federal grant categories.

16      13.   On June 9, 2006, Resnick contacted Shepard to introduce

17  himself and to learn more about SWP.  In that conversation, Shepard told

18  Resnick that SWP was seeking $4 million in financing.  Shepard also told

19  Resnick that SWP would send him its business plan.  On June 11, 2006,

20  Resnick received SWP's business plan from Al Grenier ("Grenier"),

21  Executive Vice President (and a shareholder) of SWP.  On June 12, 2006,

22  Resnick spoke with Grenier and arranged a meeting for June 17, 2006 in

23  San Diego.

24  **C.**   **Resnick Meets With Shepard and Grenier to Discuss**

25       **Involvement in SWP**

26      14.   On June 17, 2006, Resnick met with Shepard and Grenier.

27  Also attending that meeting was Chris Contogouris, Resnick's friend and

28

BLECHER & COLLINS
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW

*CASE NO. _____*

1 business partner who is also a personal friend of Microsoft co-founder and
2 billionaire investor Paul Allen.

3     15.   At the June 17th meeting, Resnick learned more about SWP
4 and its FEG technology, and SWP learned more about Resnick's business
5 background and his ability to raise financing.  The meeting was very
6 positive for all parties, and at the conclusion of the meeting, all parties
7 agreed to move forward with each other.

8 **D.   Resnick, SWP, and Roberts Enter Into a Binding Oral Agreement**

9     16.   Following the June 17th meeting, the parties negotiated and
10 eventually agreed upon a binding oral agreement.

11     17.   In forming their oral agreement, the parties agreed upon all the
12 material terms and conditions of their oral agreement with the mutual
13 intention that it was binding.  Pursuant to their oral agreement, the parties
14 agreed on the following material terms:

15     •   SWP and Roberts would sell their Intellectual Property and
16         certain other assets (including all rights to the FEG) to Sky
17         Power, LLC, a limited liability company formed by Resnick
18         following the June 17th meeting specifically for the FEG
19         project.  It was also agreed that Resnick would remain as Sky
20         Power, LLC's Chief Executive Officer.

21     •   SWP and Roberts would receive an eighty percent (80%)
22         ownership interest in Sky Power, LLC.  Resnick would retain a
23         twenty percent (20%) ownership interest.

24     •   Sky Power, LLC would raise an equity investment of $30 million
25         for development of the FEG project and would develop a
26         business plan for the FEG project.

27     18.   Both SWP and Roberts expressly agreed to these material
28 terms, and left no material terms unsettled.  While the parties further

BLECHER & COLLINS
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW

1  agreed that they would continue to work toward the preparation of a written

2  term sheet that would embody the material terms to which they had already

3  agreed, the parties understood that they already had orally agreed upon all

4  the material terms to their agreement.  Although they already had entered

5  into a binding oral agreement, the parties worked to memorialize the terms

6  of their oral agreement in a written term sheet.  Although never formally

7  signed, the final draft of the written term sheet was sent by Resnick to

8  SWP on September 22, 2006.  A true and correct copy of that term sheet

9  is attached hereto as Exhibit A and incorporated herein by this reference.

10     19.    The parties expressly manifested that they had a binding oral

11  agreement, despite their ultimate intention to enter into a written term

12  sheet, by repeatedly assuring each other that they had reached an

13  agreement.  Indeed, Shepard and Roberts specifically advised Resnick at

14  a July 29, 2006 meeting with the SWP team in Coronado, California that

15  the parties had a binding agreement and that Resnick could rely on that

16  representation in moving forward with the SWP team.  Furthermore, on

17  August 27, 2006, the parties met at Ramona airport to discuss their SWP

18  business model.  During this meeting, the parties opened a bottle of

19  champagne to celebrate their oral agreement and their goal of a successful

20  SWP venture.

21     20.    The parties also expressly manifested that they had a binding

22  oral agreement, despite their ultimate intention to enter into a written term

23  sheet, in several emails that were exchanged by the parties on August 29,

24  2006 through September 1, 2006.  True and correct copies of these three

25  emails are attached hereto as Exhibits B, C and D, and are incorporated

26  herein by this reference.  In these emails, it is clear that the parties had

27  fully agreed on all of the material terms of their agreement.  To the extent

28  there were subsequent refinements to the agreement, those refinements

BLECHER & COLLINS
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW

1  were necessitated by Defendants' actions, but were not the result of any

2  further negotiations over material terms.  For example, Defendants' earlier

3  represented to Plaintiffs that SWP owned the patents to the FEG

4  technology.  In fact, Roberts had never assigned those patents to SWP

5  and after this fact was learned, Roberts needed to be added as an

6  additional party to the agreement, which Roberts agreed to and was done.

7  Likewise, Defendants also requested certain language changes to

8  statements to be made on a website, which were agreed upon as well.

9  Thus, all material terms constituted a binding and enforceable agreement

10  were in place.

11      21.    In reliance on the good faith of the parties, Resnick performed

12  under the oral agreement and went forward with extensive efforts to raise

13  the necessary financing and declined other highly lucrative opportunities

14  that were available to him at that time, including purchasing the rights to a

15  feature film script that had Robin Williams attached to star.

16  **E.**    **In the Meantime, Resnick Makes Significant Efforts to Raise**

17      **Financing**

18      22.    In reliance on his understanding of the existence of a binding

19  agreement, Resnick immediately began to perform pursuant to the

20  representations and promises made by Defendants by attempting to raise

21  financing for the FEG project.  Among other things, Resnick formed Sky

22  Power, LLC and spent significant amounts of time and resources

23  developing a proper business plan (which, prior to his involvement, had

24  been deficient).  Resnick also contacted various investors to secure

25  financing for the project.

26      23.    One of those investors was Paul Allen.  On June 23, 2006,

27  Resnick and Contogouris met with Paul Allen in Beverly Hills, California

28  and discussed the SWP business opportunity with him.  After learning

BLECHER & COLLINS
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW

1  about SWP and its technology from Resnick, Allen informed Resnick that

2  he was interested in the project and committed to having his best people

3  look at the proposal.  Resnick agreed to provide Allen with additional

4  information about SWP for his consideration.  Subsequently, Resnick

5  provided that additional information to Allen for his review.

6       24.    On August 4, 2006, Resnick received a telephone call from Jim

7  Boyden at Vulcan Ventures ("Vulcan"), Paul Allen's investment company,

8  to set up a face-to-face meeting with Resnick and SWP in September.

9  Resnick arranged for such a meeting to take place on September 5, 2006

10  in San Diego and went to work with Grenier and others at SWP to prepare

11  for that presentation.

12  **F.**    **Shepard's Actions Against Resnick and SWP and Roberts'**

13      **Breach of the Agreement**

14       25.    On September 5, 2006, Resnick, Shepard, and Grenier met

15  with Boyden and Jill Watz from Vulcan at Ramona airport to discuss the

16  FEG business opportunity.  Because Watz had booked an early flight,

17  Boyden remained with Resnick and Grenier while Shepard offered to drive

18  Watz to the airport.  However, during that drive, and unbeknownst to

19  Resnick at the time, Shepard told Watz that Resnick was not competent to

20  act as the CEO of any FEG business venture.  In connection with those

21  representations, Shepard implied to Watz that Resnick did not have the

22  technological background necessary for that venture.

23       26.    With his statement to Watz that Resnick was not competent to

24  act as the CEO of any FEG business venture, Shepard was not simply

25  stating his opinion about Resnick but was making an assertion of fact

26  directly imputing to Resnick incompetence in his profession, business and

27  trade, while implying that Shepard knew information that supported his

28  disparaging statement.

BLECHER & COLLINS
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW

- 7 -

*CASE NO.* _____

27.   Although unknown to Resnick at the time, Shepard made those disparaging comments to Watz neither as SWP's agent nor for the purpose of benefitting SWP.  Rather, Shepard made disparaging comments about Resnick based on his personal ego and increasing sense of loss of power in the company.  Although he had repeatedly and expressly represented to Resnick that the parties had a binding agreement, Shepard increasingly came to feel threatened by Resnick and, as a result, launched a personal and deliberate plan to deprive Plaintiffs of the benefits of the agreement with SWP and Roberts.  Using Resnick to gain access to potential investors, Shepard slandered Resnick to Watz in a deliberate and purposeful effort to "squeeze out" Resnick and ensure that Vulcan would not invest in the FEG project with Resnick's involvement.  In doing so, Shepard was not only acting outside the scope of his authority on behalf of SWP, but was actually acting directly contrary to the best interests of SWP and its other owners.

28.   Unaware of Shepard's bad faith conduct, Resnick and Grenier continued their meeting with Boyden and concluded that meeting on very good terms and with the full expectation that Vulcan would follow up that meeting with additional discussions.

29.   However, on September 13, 2006, Resnick received an email from Vulcan advising him that Vulcan did not intend to pursue the FEG business opportunity any further.  Not knowing of Shepard's slanderous statements about him, Resnick and Grenier were surprised about Vulcan's rejection.  Based on information and belief, Shepard's slanderous statements caused Vulcan to reject the FEG business opportunity.

30.   Using the Vulcan rejection as a pretext, Defendants violated their representations and promises made to Resnick and Sky Power, LLC by advising them that they would not sign the term sheet memorializing the

*CASE NO. _____*

BLECHER & COLLINS
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW

1  parties' binding oral agreement and would not perform under the terms of

2  their oral agreement based on Vulcan's rejection, even though investment

3  by Vulcan was never a prerequisite to any agreement nor a term of their

4  agreement.  Apparently (and misguidedly) under the belief that they no

5  longer needed Resnick's expertise to obtain funding for their venture,

6  Shepard turned SWP and Roberts against Resnick by misrepresenting the

7  terms of the agreement to them.  Subsequently, SWP, Shepard, and

8  Roberts flouted their obligations and denied that there was a binding

9  agreement among the parties, even though this position squarely

10  contradicted repeated earlier representations that in fact the parties had a

11  binding agreement.  Thus, the above-mentioned efforts to undercut

12  Resnick's efforts are not merely unjustified, they are intentional and tortious

13  acts aimed at depriving Resnick of the benefits of his bargain and his hard

14  work on behalf of SWP.

15

16  ## FIRST CLAIM FOR RELIEF

17  ### (Anticipatory Breach of Contract

18  ### Against Defendant SWP and Roberts)

19    31. Plaintiffs repeat and incorporate by reference the allegations in

20  paragraphs 1 through 30, inclusive, as if set forth in full herein.

21    32. Plaintiffs, on the one hand, and SWP and Roberts, on the other

22  hand, entered into a binding oral agreement.

23    33. Under that binding agreement, the parties agreed, inter alia,

24  that: (1) SWP and Roberts would sell their Intellectual Property and certain

25  other assets (including all rights to the FEG) to Sky Power, LLC and that

26  Resnick would serve as CEO of Sky Power, LLC; (2) SWP and Roberts

27  would receive an eighty percent (80%) ownership interest in Sky Power,

28  LLC; and (3) Sky Power, LLC would raise an equity investment of $30

BLECHER & COLLINS
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW

1 million for development of the FEG project and would develop a business

2 plan for the FEG project.

3     34.   The parties expressly manifested that they had a binding oral

4 agreement by repeatedly assuring each other that they had reached an

5 agreement. In particular, SWP (through Roberts and Shepard) and

6 Roberts indicated to Resnick that the parties had a binding agreement and

7 that Resnick could rely on that representation in moving forward with the

8 SWP team.

9     35.   In reliance on the good faith of the parties, Plaintiffs performed

10 under the oral agreement and Resnick went forward with extensive efforts

11 to raise the necessary financing and declined other highly lucrative

12 opportunities that were available to him at that time.

13     36.   Plaintiffs have performed all actions required on their part

14 under the contract that they have had the ability to perform, and had the

15 ability to perform, and were ready and willing to perform all other actions

16 required on their part if not for SWP and Roberts' breach.

17     37.   SWP and Roberts, on the other hand, have breached the

18 contract by, inter alia, repudiating the agreement and refusing to perform

19 their obligations under the agreement.

20     38.   As a proximate result of SWP and Roberts' anticipatory breach

21 of contract, Plaintiffs have suffered damages in an amount believed to be

22 in excess of one million dollars ($1,000,000) to be proven at trial.

23

24

25

26

27

28

BLECHER & COLLINS
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW

    *CASE NO.* _____

BLECHER & COLLINS<br/>A PROFESSIONAL CORPORATION<br/>ATTORNEYS AT LAW

## SECOND CLAIM FOR RELIEF

### (Specific Performance of Contract Against
### SWP and Roberts)

39.   Plaintiffs repeat and incorporate by reference the allegations in paragraphs 1 through 30 and 32 through 37, inclusive, as if set forth in full herein.

40.   Plaintiffs have no adequate legal remedy at their disposal in that Plaintiffs have already substantially performed under that contract and damages will be inadequate to compensate Plaintiffs for the detriment suffered by them as a result of SWP and Roberts' breach.

## THIRD CLAIM FOR RELIEF

### (Breach of Implied Covenant of Good Faith and
### Fair Dealing Against SWP and Roberts)

41.   Plaintiffs repeat and incorporate by reference the allegations in paragraphs 1 through 30 and 32 through 37, inclusive, as if set forth in full herein.

42.   In every contract there is an implied covenant of good faith and fair dealing by each party not to do anything which will deprive the other parties of the benefits of the contract.

43.   SWP and Roberts have breached that implied covenant by, inter alia, repudiating that agreement and refusing to perform their obligations under their oral agreement.  SWP and Roberts also have breached that implied covenant through their fraudulent misrepresentations to Resnick relating to the agreement and their attempts to deprive Plaintiffs of the benefits of the agreement while at the same time attempting to retain the benefits of Resnick's services to them.

*CASE NO. _____*

1   44.   As a proximate result of SWP and Roberts' breach, Plaintiffs

2   have suffered damages in an amount believed to be in excess of one

3   million dollars ($1,000,000) to be proven at trial.

4

5   **FOURTH CLAIM FOR RELIEF**

6   **(In The Alternative, Promissory Estoppel Against All Defendants)**

7   45.   Plaintiffs repeat and incorporate by reference the allegations in

8   paragraphs 1 through 15, and 22 through 24, inclusive, as if set forth in full

9   herein.

10   46.   Defendants made clear and unambiguous promises to Plaintiffs

11   in which Defendants represented that they would work with Resnick to fund

12   the FEG project.  To this end, Defendants represented, inter alia, that: (1)

13   SWP and Roberts would sell their Intellectual Property and certain other

14   assets (including all rights to the FEG) to Sky Power, LLC and that Resnick

15   would serve as CEO of Sky Power, LLC; and (2) SWP and Roberts would

16   receive an eighty percent (80%) ownership interest and Resnick would

17   receive an twenty percent (20%) ownership interest in Sky Power, LLC.

18   47.   Defendants made the promises with the intention of inducing

19   action upon the part of Plaintiffs.  In particular, Defendants intended that, in

20   reliance upon Defendants' clear and unambiguous promises, Plaintiffs

21   would go to extensive efforts to raise an equity investment of $30 million for

22   development of the FEG project and would develop a business plan for the

23   FEG project.

24   48.   Plaintiffs reasonably, foreseeably, and actually relied upon

25   those promises, to Plaintiffs' detriment and injury.  Among other things,

26   Resnick formed Sky Power, LLC and spent significant amounts of time and

27   resources developing a proper business plan (which, prior to his

28

BLECHER & COLLINS
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW

- 12 -

CASE NO. _____

1   involvement, had been deficient).  Resnick also contacted various investors

2   to secure financing for the FEG project.

3       49.   Plaintiffs were injured and damaged by their reliance upon

4   Defendants' clear and unambiguous promises because they went forward

5   with extensive efforts to raise the necessary financing for the FEG project

6   while declining other highly lucrative opportunities that were available to

7   Resnick at that time.

8       50.   Injustice can only be avoided as a result of enforcement of

9   Defendants' promises to Plaintiffs.

10

11   **FIFTH CLAIM FOR RELIEF**

12   **(Tortious Interference With Contract Against Shepard)**

13       51.   Plaintiffs repeat and incorporate by reference the allegations in

14   paragraphs 1 through 30 and 32 through 37, inclusive, as if set forth in full

15   herein.

16       52.   A binding and enforceable oral agreement exists between

17   Plaintiffs, on the one hand, and SWP and Roberts, on the other hand.

18       53.   Shepard has interfered with that contract by, inter alia,

19   slandering Resnick in an effort to frustrate Resnick's performance under

20   that agreement, and by taking actions to have SWP and Roberts repudiate

21   that agreement.

22       54.   Shepard made those disparaging comments neither as SWP's

23   agent nor for the purpose of benefitting SWP.  Rather, Shepard made

24   disparaging comments about Resnick as part of a personal and deliberate

25   plan to deprive Plaintiffs of the benefits of the agreement with SWP and

26   Roberts.  Using Resnick to gain access to potential investors, Shepard

27   then slandered Resnick in a deliberate and purposeful effort to "squeeze

28

BLECHER & COLLINS
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW

- 13 -
*CASE NO.* _____

1  out" Resnick and obtain financing from Vulcan without Resnick's

2  involvement.

3    55.    Shepard's actions have caused SWP and Roberts to breach

4  that contract and caused a disruption of the contractual relationship.

5    56.    At the time of his interference with that contract, Shepard knew

6  of the existence of that contract.

7    57.    Shepard's unjustified conduct has been the moving or

8  procuring cause of that breach.

9    58.    As a proximate result of Shepard's conduct, Plaintiffs have

10  suffered damages in an amount believed to be in excess of one million

11  dollars ($1,000,000) to be proven at trial.

12    59.    Plaintiffs also are entitled to injunctive and equitable relief

13  because money damages are inadequate.

14    60.    Shepard's conduct in interfering with Plaintiffs' contract was

15  willful and intended to cause injury to Plaintiffs through, inter alia, depriving

16  Plaintiffs of the benefits of their bargain through improper means.  Plaintiffs

17  are  therefore entitled to an award of exemplary or punitive damages under

18  California Civil Code § 3294 based on such willful, oppressive, fraudulent,

19  and/or malicious conduct.

20

21            **SIXTH CLAIM FOR RELIEF**

22        **(Intentional Interference With Prospective**

23        **Economic Advantage Against Shepard)**

24    61.    Plaintiffs repeat and incorporate by reference the allegations in

25  paragraphs 1 through 15, and 22 through 30, inclusive, as if set forth in full

26  herein.

27    62.    There existed a prospective business relationship between

28  Plaintiffs, on the one hand, and SWP and Roberts, on the other hand, and

- 14 -                    *CASE NO.* _____

BLECHER & COLLINS
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW

1  Plaintiffs had a probability of future economic benefit from that business

2  relationship.

3      63.    Shepard injuriously interfered with that relationship by, inter

4  alia, slandering Resnick and undertaking actions to cause SWP and

5  Roberts to repudiate that relationship and cause a disruption of the

6  business relationship.

7      64.    Shepard made those disparaging comments neither as SWP's

8  agent nor for the purpose of benefitting SWP.  Rather, Shepard made

9  disparaging comments about Resnick as part of a personal and deliberate

10  plan to deprive Plaintiffs of the benefits of the agreement with SWP and

11  Roberts.  Using Resnick to gain access to potential investors, Shepard

12  then slandered Resnick in a deliberate and purposeful effort to "squeeze

13  out" Resnick and obtain financing from Vulcan without Resnick's

14  involvement.

15      65.    At the time of his interference with that business relationship,

16  Shepard knew of the existence of that relationship.

17      66.    Shepard's conduct is wrongful and falls outside the bounds of

18  fair and lawful competition.

19      67.    As a proximate result of Shepard's conduct, Plaintiffs have

20  suffered damages in an amount believed to be in excess of one million

21  dollars ($1,000,000) to be proven at trial.

22      68.    Shepard's conduct in interfering with Plaintiff's prospective

23  economic advantage was willful and intended to cause injury to Plaintiffs

24  through, inter alia, depriving Plaintiffs of the benefits of their relationship

25  through improper means.  Plaintiffs are  therefore entitled to an award of

26  exemplary or punitive damages under California Civil Code § 3294 based

27  on such willful, oppressive, fraudulent, and/or malicious conduct.

28

BLECHER & COLLINS
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW

CASE NO. _____

## SEVENTH CLAIM FOR RELIEF

### (Fraud in the Inducement Against Shepard and Roberts)

69.    Plaintiffs repeat and incorporate by reference the allegations in paragraphs 1 through 15, 22 through 30 and 46 through 50, inclusive, as if set forth in full herein.

70.    In order to induce Plaintiffs to undertake the efforts made on behalf of SWP as outlined above, Shepard and Roberts represented to Plaintiffs that Plaintiffs had a binding agreement with SWP and Roberts.

71.    Relying on those representations, Plaintiffs expended significant time, efforts, and resources seeking financing for SWP's FEG.

72.    The representations made by Shepard and Roberts were knowingly false and made with the intent to deceive Plaintiffs.  The true facts, which Shepard and Roberts concealed from Plaintiffs, were that Defendants intended to repudiate the agreement in a deliberate plan to deprive Plaintiffs of the benefits of the agreement with SWP and Roberts while at the same time using Resnick to obtain access to financing sources.

73.    Plaintiffs reliance on Shepard and Roberts' representations was reasonable and justified because those representations were repeatedly made to Plaintiffs while Plaintiffs were already undertaking efforts on behalf of the FEG project.

74.    As a result of Robert's fraud in the inducement, Plaintiffs have suffered damages in an amount believed to be in excess of one million dollars ($1,000,000) to be proven at trial.

75.    Shepard and Roberts, and each of them, willfully, knowingly, oppressively, and maliciously conspired and agreed among themselves to defraud Plaintiffs.  Shepard and Roberts did the acts and things herein alleged pursuant to and, in furtherance of, the conspiracy.  Each Defendant

BLECHER & COLLINS
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW

1  had knowledge of the conspiracy and furthered the conspiracy by

2  cooperating, aiding and encouraging and ratifying the acts of other

3  defendants who may have participated in the conspiracy subsequent to its

4  formation and operation.  Plaintiff is informed and believes and thereon

5  alleges that Shepard and Roberts' conspiracy is ongoing and continuing.

6      76.    Shepard and Roberts' fraudulent conduct was willful,

7  fraudulent, malicious, and oppressive and was intended to cause injury to

8  Plaintiffs through, inter alia, depriving Plaintiffs of the benefits of their

9  relationship through improper means.  Shepard and Roberts behaved

10 despicably by deliberately making false promises to Resnick in order to

11 induce Resnick to raise funds for SWP's FEG project, while at the same

12 time plotting to deprive Resnick of any benefits for his efforts.  Plaintiffs are

13 therefore entitled to an award of exemplary or punitive damages under

14 California Civil Code § 3294 based on such willful, fraudulent, malicious,

15 and/or oppressive conduct.

16

17              **EIGHTH CLAIM FOR RELIEF**

18         **(Promissory Fraud Against Shepard and Roberts)**

19     77.    Plaintiff repeats and incorporates by reference the allegations

20 in paragraphs 1 through 15, 22 through 24 and 46 through 50, inclusive, as

21 if set forth in full herein.

22     78.    Shepard and Roberts made clear and unambiguous promises

23 to Plaintiffs in which Shepard and Roberts represented that they would

24 work with Resnick to fund the FEG project.  To this end, Shepard and

25 Roberts represented, inter alia, that: (1) SWP and Roberts would sell their

26 Intellectual Property and certain other assets (including all rights to the

27 FEG) to Sky Power, LLC and that Resnick would serve as CEO of Sky

28 Power, LLC; and (2) SWP and Roberts would receive an eighty percent

- 17 -                    *CASE NO. _____*

BLECHER & COLLINS
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW

1  (80%) ownership interest and Resnick would receive an twenty percent

2  (20%) ownership interest in Sky Power, LLC.

3       79.   When Shepard and Roberts made these clear and

4  unambiguous promises to Plaintiffs, they did so without any intention to

5  perform their obligations pursuant to their promises.

6       80.   Plaintiffs reasonably, foreseeably, and actually relied upon

7  those promises, to Plaintiffs' detriment and injury.  Among other things,

8  Resnick formed Sky Power, LLC and spent significant amounts of time and

9  resources developing a proper business plan (which, prior to his

10  involvement, had been deficient).  Resnick also contacted various investors

11  to secure financing for the FEG project.

12       81.   Plaintiffs were injured by their reliance upon Shepard and

13  Roberts' clear and unambiguous promises because they went forward with

14  extensive efforts to raise the necessary financing for the FEG project while

15  declining other highly lucrative opportunities that were available to Resnick

16  at that time.

17       82.   As a result of Shepard and Roberts' promissory fraud, Plaintiffs

18  have suffered damages in an amount believed to be in excess of one

19  million dollars ($1,000,000) to be proven at trial.

20       83.   Shepard and Roberts, and each of them, willfully, knowingly,

21  oppressively, and maliciously conspired and agreed among themselves to

22  defraud Plaintiffs.  Shepard and Roberts did the acts and things herein

23  alleged pursuant to and, in furtherance of, the conspiracy.  Each Defendant

24  had knowledge of the conspiracy and furthered the conspiracy by

25  cooperating, aiding and encouraging and ratifying the acts of other

26  defendants who may have participated in the conspiracy subsequent to its

27  formation and operation.  Plaintiff is informed and believes and thereon

28  alleges that Shepard and Roberts' conspiracy is ongoing and continuing.

BLECHER & COLLINS
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW

84.    Shepard and Roberts' fraudulent conduct was willful, fraudulent, malicious, and oppressive and was intended to cause injury to Plaintiffs through, inter alia, depriving Plaintiffs of the benefits of their relationship through improper means.  Shepard and Roberts behaved despicably by deliberately making false promises to Resnick in order to induce Resnick to raise funds for SWP's FEG project, while at the same time plotting to deprive Resnick of any benefits for his efforts.  Plaintiffs are therefore entitled to an award of exemplary or punitive damages under California Civil Code § 3294 based on such willful, fraudulent, malicious, and/or oppressive conduct.

## NINTH CLAIM FOR RELIEF

### (Injunctive Relief Against SWP and Roberts)

85.    Plaintiff repeats and incorporates by reference the allegations in paragraphs 1 through 30, 32 through 37, 40, 42 through 43, 46 through 50, 52 through 60, 62 through 68, 70 through 76 and 78 through 84, inclusive, as if set forth in full herein.

86.    SWP and Roberts' wrongful conduct, unless and until enjoined and restrained by order of this court, will cause great and irreparable injury to Plaintiffs by depriving Plaintiffs of, inter alia, their rights to the Intellectual Property and certain other assets (including all rights to the FEG) of SWP and Roberts.

87.    Plaintiffs have no adequate remedy at law for the injuries currently being suffered or threatened insomuch as an injunction is necessary to prevent waste, or great or irreparable injury to Plaintiffs, based on SWP and Roberts' commission or continuance of their wrongful acts during the litigation.  As a result, Plaintiffs request issuance of a temporary restraining order, a preliminary injunction, and a permanent

CASE NO. _____

BLECHER & COLLINS
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW

1  injunction, all enjoining Defendants, and each of them, and their agents,
2  servants, and employees, and all persons acting under, in concert with, or
3  for them:

4          a.    From transferring, disposing, encumbering, concealing,
5                 removing, or in any way impairing the assets of SWP and
6                 Roberts to which Plaintiffs are entitled under the
7                 agreement;
8          b.    From engaging in all further acts preventing performance
9                 of the agreement;

10      88.    Furthermore, as a proximate result of SWP and Roberts'
11  wrongful conduct, Plaintiffs have been damaged, and will continue to suffer
12  additional damages, in an amount to be proven at trial.

13

14  **TENTH CLAIM FOR RELIEF**
15  **(Constructive Trust Against SWP, Shepard, and Roberts)**
16      89.    Plaintiff repeats and incorporates by reference the allegations
17  in paragraphs 1 through 30, 32 through 37, 40, 42 through 43, 46 through
18  50, 52 through 60, 62 through 68, 70 through 76 and 78 through 85,
19  inclusive, as if set forth in full herein.

20      90.    Plaintiffs are, and at all relevant times were, entitled to, inter
21  alia, rights to the Intellectual Property and certain other assets (including all
22  rights to the FEG) of SWP and Roberts upon the performance of certain
23  conditions, which performance has been prevented by SWP, Shepard, and
24  Roberts.

25      91.    Based on the improper conduct outlined above, SWP, Shepard,
26  and Roberts are wrongfully detaining those assets from Plaintiffs.

27

28

BLECHER & COLLINS
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW

*CASE NO. _____*

92.    By virtue of SWP, Shepard, and Roberts' wrongful detention of those assets, Defendants hold such personal property as a constructive trustee for Plaintiffs' benefit.

## ELEVENTH CLAIM FOR RELIEF
### (Declaratory Relief Against SWP and Roberts)

93.    Plaintiff repeats and incorporates by reference the allegations in paragraphs 1 through 30, inclusive, as if set forth in full herein.

94.    As shown above, an actual case and controversy has now arisen between Plaintiffs, on the one hand, and SWP and Roberts, on the other hand, regarding the agreement.

95.    As a result of this dispute, Plaintiffs desire a judicial determination of the parties' respective rights and duties under the contract, and a judicial declaration is necessary and appropriate at this time under the circumstances in order that Plaintiffs may ascertain their rights and duties thereunder and effectuate SWP and Roberts' performance under that agreement.

## TWELFTH CLAIM FOR RELIEF
### (Slander Per Se Against Shepard)

96.    Plaintiff repeats and incorporates by reference the allegations in paragraphs 1 through 14 and 21 through 29, inclusive, as if set forth in full herein.

97.    On September 5, 2006, Shepard made a false and unprivileged oral statement of or concerning Resnick, namely, his statement to Watz that Resnick was incompetent to serve as CEO of the FEG project.

98.    That false and unprivileged statement by Shepard tends directly to injure a person with respect to his office, profession, trade, or

BLECHER & COLLINS
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW

- 21 -

1    business by imputing general disqualification in those respects which the

2    office or other occupation peculiarly requires. Therefore, Shepard's false

3    statement constitutes slander per se, as codified in California Civil Code

4    Section 46.

5       99.    With his statement to Watz that Resnick was not competent to

6    act as the CEO of any FEG business venture, Shepard was not simply

7    stating his opinion about Resnick but rather was making an assertion of

8    fact directly imputing to Resnick incompetence in his profession, business

9    and trade while implying that Shepard knew information that supported his

10    disparaging statement.

11       100.   Although unknown to Resnick at the time, Shepard made those

12    disparaging comments to Watz neither as SWP's agent nor for the purpose

13    of benefitting SWP. Rather, Shepard made disparaging comments about

14    Resnick based on his personal ego and increasing sense of loss of power

15    in the company. Although he had repeatedly and expressly represented to

16    Resnick that the parties had a binding agreement, Shepard increasingly

17    came to feel threatened by Resnick and, as a result, launched a personal

18    and deliberate plan to deprive Plaintiffs of the benefits of the agreement

19    with SWP and Roberts. Using Resnick to gain access to potential

20    investors, Shepard slandered Resnick to Watz in a deliberate and

21    purposeful effort to "squeeze out" Resnick and ensure that Vulcan would

22    not invest in the FEG project with Resnick's involvement. In doing so,

23    Shepard was not only acting outside the scope of his authority on behalf of

24    SWP, but was actually acting directly contrary to the best interests of SWP

25    and its other owners.

26       101.   As a proximate result of Shepard's conduct, Resnick has

27    suffered, and continues to suffer, damages in an amount believed to be in

28    excess of one million dollars ($1,000,000) to be proven at trial.

BLECHER & COLLINS
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW

1    102.  Shepard's slanderous conduct was willful, oppressive,

2  malicious, and intended to cause injury to Resnick.  As a result, Resnick is

3  entitled to an award of exemplary or punitive damages under California

4  Civil Code § 3294 against Shepard based on such oppressive, fraudulent,

5  and/or malicious conduct.

6         WHEREFORE, Plaintiffs pray for relief as follows:

7                    **AS TO THE FIRST CLAIM FOR RELIEF**

8         1.    For compensatory damages in excess of $1 Million to be

9  proven at trial.

10                  **AS TO THE SECOND CLAIM FOR RELIEF**

11        2.    For specific performance of the agreement entered into by and

12 between Plaintiffs, on the one hand, and SWP and Roberts, on the other

13 hand.

14                  **AS TO THE THIRD CLAIM FOR RELIEF**

15        3.    For compensatory damages in excess of $1 Million to be

16 proven at trial.

17                 **AS TO THE FOURTH CLAIM FOR RELIEF**

18        4.    For restitution of any unjust enrichment obtained by Defendants

19 that was caused by Plaintiffs' reliance upon Defendants' promises that is

20 not taken into account in computing damages for actual loss; and

21        5.    For compensatory damages in excess of $1 Million be proven

22 at trial, including but not limited to lost profits.

23                  **AS TO THE FIFTH CLAIM FOR RELIEF**

24        6.    For compensatory damages in excess of $1 Million to be

25 proven at trial; and

26        7.    For exemplary and punitive damages.

27

28

BLECHER & COLLINS
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW

*CASE NO.* _____

BLECHER & COLLINS
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## AS TO THE SIXTH CLAIM FOR RELIEF

8.     For compensatory damages in excess of $1 Million to be proven at trial; and

9.     For exemplary and punitive damages.

## AS TO THE SEVENTH CLAIM FOR RELIEF

10.     For compensatory damages in excess of $1 Million to be proven at trial; and

11.     For exemplary and punitive damages.

## AS TO THE EIGHTH CLAIM FOR RELIEF

12.     For compensatory damages in excess of $1 Million to be proven at trial; and

13.     For exemplary and punitive damages.

## AS TO THE NINTH CLAIM FOR RELIEF

14.     For a temporary restraining order, a preliminary injunction, and a permanent injunction, all enjoining defendants, and each of them, and their agents, servants, and employees, and all persons acting under, in concert with, or for them:

      a.     From transferring, disposing, encumbering, concealing, removing, or in any way impairing the value of the assets of SWP and Roberts to which Plaintiffs are entitled under the agreement;

      b.     From engaging in all further acts preventing performance of the agreement; and

15.     For compensatory damages in an amount to be proven at trial.

## AS TO THE TENTH CLAIM FOR RELIEF

16.     For an order compelling SWP and Roberts' performance of the terms of the agreement;

CASE NO. _____

1    17.   For a temporary restraining order, a preliminary injunction, and

2    a permanent injunction, all enjoining defendants, and each of them, and

3    their agents, servants, and employees, and all persons acting under, in

4    concert with, or for them:

5              a.    From transferring, disposing, encumbering, concealing,

6                    removing, or in any way impairing the assets of SWP and

7                    Roberts to which Plaintiffs are entitled under the

8                    agreement;

9              b.    From engaging in all further acts preventing performance

10                   of the agreement;

11   18.   For an accounting; and

12   19.   For compensatory damages in excess of $1 Million to be

13   proven at trial.

14                   **AS TO THE ELEVENTH CLAIM FOR RELIEF**

15   20.   For a declaration of the parties' respective rights and duties

16   pursuant to their agreement.

17                   **AS TO THE TWELFTH CLAIM FOR RELIEF**

18   21.   For general damages for slander per se;

19   22.   For compensatory damages in excess of $1 Million  to be

20   proven at trial; and

21   23.   For exemplary and punitive damages.

22   ///

23   ///

24   ///

25   ///

26   ///

27   ///

28   ///

- 25 -                    *CASE NO.* _____

BLECHER & COLLINS
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW

1          **AS TO ALL CLAIMS FOR RELIEF**

2          23.    For costs of suit;

3          24.    For such other and further relief as the Court deems just and

4    appropriate.

5

6    Dated:    May 3, 2007          BLECHER & COLLINS, P.C.
                                    MAXWELL M. BLECHER
7                                   JOHN E. ANDREWS

8

9                                   By _____
10                                         John E. Andrews
                                    Attorneys for Plaintiffs
11                                  David Resnick and Sky Power, LLC

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 26 -                    *CASE NO.* _____

## DEMAND FOR JURY TRIAL

Plaintiffs David Resnick and Sky Power LLC hereby demand a trial by jury in the above-captioned matter.

Dated:   May 3, 2007

BLECHER & COLLINS, P.C.
MAXWELL M. BLECHER
JOHN E. ANDREWS

By: _____
    John E. Andrews
Attorneys for Plaintiffs David Resnick
and Sky Power LLC

- 27 -

CASE NO. _____

**EXHIBIT A**

## SKY WINDPOWER ASSET SALE
## 10/02/06 - BINDING TERM SHEET

PARTIES:

Sky Power, LLC ("LLC"), a Nevada Limited Liability Company.
Sky WindPower Corporation, ("Company"), a California Corporation.
Bryan Roberts, ("Roberts") an individual residing in Australia

TERM:

Six (6) months from the date of the execution of this Binding Term Sheet ("Term"); provided however that the Term may be extended for an additional three (3) months if a qualified potential funding source or investor requests in writing such extension.

SALE OF ASSETS:

Company and Roberts own certain Intellectual Property, ("IP,") as set forth in Exhibit A to this Binding Term Sheet. Company and Roberts agree to the transfer ("Transfer") of their IP and any other technology, documents, web pages, know-how or assets owned or controlled by the Company and Roberts, collectively the ("Assets"), to LLC in exchange for 80% (eighty percent) ownership in LLC, on the terms and conditions set forth in the INVESTMENT section below. Transfer of the technology will be subject to the terms and conditions yet to be decided by the parties concerned in a fair and amicable fashion.

SERVICES

LLC will raise an equity investment ("Investment") of $30 Million for development of Company's Flying Electric Generator, ("FEG"), program. LLC will contact investors, third party finders, ("Finders") and/or other sources to obtain funding for the Investment. The Investment will be placed in LLC at a valuation and terms to be negotiated with Company. Company shall have the right to approve investors and terms of Investment prior to closing and Transfer.

LLC will research and develop a complete business plan to build and test Company's FEG program and maximize the commercial exploitation of the perfected FEG technology. Company shall assist LLC in development of business plan, specifically in the creation of a detailed 3 year project plan for initial building and testing of FEGs. Company shall have the right to approve the final version of business plan prior to presentation to investors. LLC will provide the funding, subject to reimbursement upon closing of the Investment, for all reasonable legal services, business analysis, marketing and travel expenses required for the successful development of the business plan and execution of the Investment ("Costs"). Collectively all of the above are the "Services".

*LA 126575390v6 8/1/2006*

PUBLIC
RELATIONS        Company agrees to cooperate with LLC in terms of all public relations
                 efforts made by LLC to promote the Investment, including magazine and
                 newspaper articles and the skywindpower.com website. The following
                 statement will be posted on the website and used in the business plan:

                 **Press Release – October 2, 2006:**
                 **Sky WindPower Corporation is pleased to announce that it has**
                 **entered into an agreement with Sky Power LLC, David Resnick CEO,**
                 **who can be Cell: 503-703-7031  -  Email: drpdx@yahoo.com**

                 All parties agree that there will be no press releases without prior
                 approval.

INVESTMENT:      In return for the Services, and immediately prior to the closing of the
                 Investment, the Company and Roberts agree to Transfer the Assets owned
                 or controlled by the Company and Roberts to LLC. Concurrently with the
                 Transfer of Assets and immediately prior to the closing of the Investment,
                 LLC will grant to the Company an 80% (eighty percent) ownership
                 interest in LLC. The division of the 80% ownership interest among
                 shareholders of Company will be solely determined by Company.

                 The Company agrees that the key employees, David Shepard, Al Grenier,
                 Bryan Roberts and Jonathan Freidin will enter into exclusive 4 year
                 employment agreements with LLC prior to closing of Investment.

                 The Company agrees that in the event any investor supports David
                 Resnick ("DR") for CEO (or comparable position) of LLC, that the
                 Company shall support DR for CEO (or comparable position), including,
                 without limitation by voting its membership interests, ownership interests
                 or management interests in LLC in favor of DR for CEO (or comparable
                 position) ("Support for Appointment").

                 The terms of Investment, LLC operating agreement, capital structure, and
                 key man employment agreements, will be determined by Company and
                 Investors and agreed by all parties prior to closing of Investment.

                 The parties agree that LLC may use the services of a Finder to secure the
                 Investment. The parties agree that a finder's fee/commission, in an
                 amount to be approved by Company and investors, but in any case not to
                 exceed 10% of the total Investment, ("Finders Fee") may be paid to
                 Finder. The Finder's Fee may be paid in a combination of cash and equity
                 ownership in LLC, to be determined by Finder, Company and investors. .

*10/02/06*

- 2 -

Upon the funding of the Investment, LLC shall be entitled to be repaid in full the Costs.

**SUBSEQUENT
INVESTMENT:**   The Company agrees that the LLC shall have the exclusive right to seek investors for the Company for a period of six months following the signing of this Binding Term Sheet.  For a period of one year after the end of this six months period, if any investor, potential investor, entity, company or person that the LLC contacts directly or indirectly while performing the Services subsequently, makes an investment of $5,000,000 (Five Million Dollars) or more in the Company or any entity or affiliate in which the Company has an interest, participates or transfers all or a portion of its intellectual property to, then all the other terms of this agreement shall still apply regardless of whether or not The LLC has been successful in obtaining the funds sought as part of the SERVICES sections of this Binding Term Sheet.

**REQUIRED
DOCUMENTATION:** The LLC will provide a list of all those that the LLC contacted directly to the company within 10 days after the end of the 6 month exclusivity period. In order for the indirect contacts to be considered, the burden of demonstrating a chain of events resulting in the LLC prior actions being the procuring cause for the subsequent investment will lie solely with the LLC.

**SUCCESS FEE:**   LLC shall not be in default of this Binding Term Sheet if it is unable or unwilling to procure the Investment provided however that LLC shall only be entitled to the Payment and the Appointment upon the Investment upon the terms set forth in this Binding Term Sheet (e.g. upon the funding of the Investment or the Subsequent Investment).

**GOVERNING
LAW:**   This Binding Term Sheet shall be governed by the laws of the State of California without regard to California statutes dealing with choice of law.

**LONG FORM
DOCUMENTS:**   The parties may enter into long form documentation which more formally and completely describes their agreements as set forth in this Binding Term Sheet provided however that unless and until such long form documentation is executed by both parties this Binding Term Sheet shall be binding and effective.

- 3 -

**-30-**

DATED: October 2, 2006

Accepted and Agreed:

Sky Power, LLC
4080 Paradise Rd., #269
Las Vegas, NV 89169

Sky WindPower Corporation
Ramona Airport
Ramona, CA 92065

_____
David Resnick
CEO/Managing Member

_____
David Shepard
Chief Executive Officer

C/O Sky WindPower Corporation
Ramona Airport
Ramona, CA 92065

_____
Bryan Roberts
An Individual

- 4 -

10/02/06

EXHIBIT A

**United States Patent Application**                    *20050067839*
**Kind Code**                                                    **A1**
Roberts, Bryan William ;   et al.                **March 31, 2005**

Precisely controlled flying electric generators III

### Abstract

One or more tethered platforms, each comprising three or more, mill rotors, are operated at altitudes in relatively high winds to generate electricity. These windmill kites use one or more electromechanical tethers on each platform. Their position, attitude and orientation are monitored by one or more GPS receivers and/or gyros and controlled through differential thrusts and torque-reactions produced by the mill rotors. The kites can be electrically powered from a ground supply during relatively calm periods, or landed if desired. During windy periods the kites may be used to generate electricity by tilting the rotors at an angle, or incidence to the on-coming wind. In this generate mode the mill rotors simultaneously develop thrust while generating electricity.

**United States Patent**                                **6,781,254**
**Roberts**                                           **August 24, 2004**

Windmill kite

### Abstract

A kite having a flying platform including a plurality of mill rotors, at least one tethering line maintaining the platform at a substantially fixed geographical location, at least one dynamo on the platform drive connected to the mill rotors, and a conductor connecting the dynamo to an electrical transmission and supply system at ground level. The windmill kite has at least three substantially axially co-directed, spaced apart mill rotors disposed in an array which is symmetrical in terms of thrust capacity about each of two orthogonal axes extending from the platform and being neutral in terms of torque capacity about a third orthogonal axes extending from the platform.

**DR**

---

**From:**    Grenier, Al [al@skywindpower.com]
**Sent:**    Tuesday, August 29, 2006 8:13 PM
**To:**    David Resnick
**Subject:**  [Fwd: Re:Re: Good meeting with Resnick]

David,

Finally, Bryan got to an Internet connection. I thought I would simply forward this to you. Please note
that I have not copied Dave or Bryan. I doubt there would be an issue but it is just simpler this way. PJ,
Daves daughter also said that Dave was in a very positive mood on Monday and I quote "Whatever you
and Resnick did yesterday... Bravo!"

Thanks again,

Al

> ------ Forwarded Message ------
> **Date:** Wed, 30 Aug 2006 11:51:56 +1000
> **From:** roberts0@tpg.com.au
> **To:** Dave Shepard
> **Cc:** al@skywindpower.com, roberts0@tpg.com.au
> **Subject:** Re:Re: Good meeting with Resnick
>
> Dear Dave and Al,
>
> Thanks for this and the prior information on meetings
> with David R. and Jim(?) at Vulcan next week.
>
> Please go ahead and sign the Resnick agreement provided
> you two folk are satisfied with the position. I have not
> studied your attachment of the agreement as yet, but if
> you two are satisfied so am I.
>
> I was pleased to hear the visits to the museum with PJ and
> Len, and David R. later, went well.
>
> Also I have done nothing on the IP position as this is
> one of Sky WindPower's stengths at the moment.
>
> Our new grandson, William Allen, arrived about 3 days ago
> and they are all fine thankfully. I am still rather remote
> from the internet. So please go ahead and enter into
> agreements if and when you two are in agreement.

**-33-**

10/23/2006

I will study the Vulcan (Jim's(?)) questions later today.
From a quick read of it there seems to be some issue
of locating FEGs in populated areas. I will reply in more
detail on this later today.

All the best
Bryan

Quoting Dave Shepard <shepard@skywindpower.com>:

>
> Dear Bryan,
>
> I just came back from a very harmonious meeting with David Resnick
> and Al. Al had arranged a tour of the Classic Rotors Museum exhibit
> at the Ramona airport for David, the same tour that Terry Robinson
> (of Classic Rotors) had provided to Len, PJ, Al and myself yesterday.
> I'm sorry there wasn't a good opportunity for you to see this
> considerable variety of historic helicopters, some of which the
> volunteers have actually put into flying condition.
>
> Resnick was much impressed, and it does seem very clear that the
> volunteers there, if not involved themselves, have the potential of
> putting us in contact with the people we will need to complete design
> and build the 240 kW FEG there, if that is what we wish to do.
>
> The three of us then met at Al's office afterwards, and that went
> very well. Most of the time was spent discussing the material we
> should prepare for the meeting with Jim Boyden, Paul Allen's
> representative, on September 5.
>
> I expressed that I was prepared to recommend that we sign the last
> version of the "Binding Terms of Agreement" but that I wished to hear
> from you before doing so. I was pleasantly surprised to have David
> Resnick suggest that he sign the Binding Terms of Agreement and leave
> two copies with me unsigned by me, waiting to hear from you. He then
> followed through on that, and I have those two copies with me at home
> now.
>
> Bryan, I do recommend that we sign it, my reasoning being as
> expressed in my last emails. There certainly are some risks, and a
> couple of aspects about the agreement which still concern me. But our
> meeting today was reassuring to me, and I believe this agreement will
> lead to success if we keep our heads about us. And, I must add, I
> think Al is doing a very good job in assemblying what we need for the
> Boyden meeting.
>
> I trust all goes well with the new addition to your family, and my
> best to all. (Joyce is on the East Coast until Sept 6).
>

**-34-**

10/23/2006

> Dave
>
>
>

Best regards,

Al Grenier, Executive V.P.
Sky WindPower Corp.
Ramona Airport
Ramona CA. 92065
Phone: 619.265.3434

Alt Phone: 760-712-2874 Fax: 619.423.0214

Visit our website: skywindpower.com

All the world's energy needs are right above us, Flying Electric Generators will reach up and grab it.



10/23/2006

**EXHIBIT C**

**DR**

---

| | |
|---|---|
| **From:** | Grenier, Al [al@skywindpower.com] |
| **Sent:** | Tuesday, August 29, 2006 9:16 PM |
| **To:** | David Resnick |
| **Cc:** | Dave Shepard |
| **Subject:** | [Fwd: Rryan's approval received] |

David,

How do you want the executed Term Sheet sent to you? Fax, mail or both? Please let us know, along with Fax #  and /or mailing address.

Ditto on the "Onword and upword"!

Al

> ------ Forwarded Message ------
> **Date:** Tue, 29 Aug 2006 20:21:42 -0700
> **From:** "Dave Shepard" <shepard@skywindpower.com>
> **To:** al@skywindpower.com
> **Cc:** roberts0@tpg.com.au
> **Subject:** Rryan's approval received
>
>
> Al,
>
> As you will already have seen, Bryan is in agreement. Please let David know..
>
> Shall I sign and send David's copy to him, or how would he like to handle that? Please let me know that too.
>
> That champagne was good!
>
> Onward and upward!
>
> Dave

Best regards,

Al Grenier, Executive V.P.
Sky WindPower Corp.
Ramona Airport
Ramona CA. 92065
Phone: 619.265.3434

Alt Phone: 760-712-2874 Fax: 619.423.0214

**-36-**

10/23/2006

Visit our website: skywindpower.com

All the world's energy needs are right above us, Flying Electric Generators will reach up and grab it.



10/23/2006

## DR

| | |
|---|---|
| **From:** | David Resnick [drpdx@yahoo.com] |
| **Sent:** | Wednesday, August 30, 2006 12:40 PM |
| **To:** | 'Grenier, Al' |
| **Cc:** | 'Dave Shepard' |
| **Subject:** | RE: [Fwd: Rryan's approval received] |

Champagne was great!  Thanks a lot.  Made me a bit sleepy on the long trip back to LA though.

In regards to the term sheet, why don't you just hold onto it til we see each other next week.

Just got back to Portland and am getting started on the Boyden material you sent.

Best, David

> -----Original Message-----
> **From:** Grenier, Al [mailto:al@skywindpower.com]
> **Sent:** Tuesday, August 29, 2006 9:16 PM
> **To:** David Resnick
> **Cc:** Dave Shepard
> **Subject:** [Fwd: Rryan's approval received]
>
> David,
>
> How do you want the executed Term Sheet sent to you? Fax, mail or both? Please let us know, along with Fax #  and /or mailing address.
>
> Ditto on the "Onword and upword"!
>
> Al
>
> > ------ Forwarded Message ------
> > **Date:** Tue, 29 Aug 2006 20:21:42 -0700
> > **From:** "Dave Shepard" <shepard@skywindpower.com>
> > **To:** al@skywindpower.com
> > **Cc:** roberts0@tpg.com.au
> > **Subject:** Rryan's approval received
> >
> >
> > Al,
> >
> > As you will already have seen, Bryan is in agreement. Please let David know..
> >
> > Shall I sign and send David's copy to him, or how would he like to handle that? Please let me know that too.
> >
> > That champagne was good!

**-38-**

10/24/2006

Onward and upward!

Dave

Best regards,

Al Grenier, Executive V.P.
Sky WindPower Corp.
Ramona Airport
Ramona CA. 92065
Phone: 619.265.3434

Alt Phone: 760-712-2874 Fax: 619.423.0214

Visit our website: skywindpower.com

All the world's energy needs are right above us, Flying Electric Generators will reach up and grab it.



**-39-**

JS 44
(Rev. 07/89)

# CIVIL COVER SHEET

# ORIGINAL

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE SECOND PAGE OF THIS FORM.)

## I. (a) PLAINTIFFS
DAVID RESNICK, an individual; SKY POWER, LLC, a Nevada limited liability corporation

## DEFENDANTS
DAVID SHEPARD, an individual; BRIAN ROBERTS, an individual; SKY WINDPOWER CORPORATION, a California corporation; and DOES 1 through 100, inclusive,

**(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF** Multnomah, OR.
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY: _____ DEPUTY

**(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)**
BLECHER & COLLINS, P.C.
515 S. Figueroa St., 17th Floor
Los Angeles, CA 90071
(213) 622-4222

ATTORNEYS (IF KNOWN)
William T. Bissett
Hughes Hubbard & Reed LLP
350 S. Grand Ave., 36th Floor
Los Angeles, CA 90071-3442

## II. BASIS OF JURISDICTION (PLACE AN 'X' IN ONE BOX ONLY)

☐ 1 U.S. Government Plaintiff
☐ 2 U.S. Government Defendant
☐ 3 Federal Question (U.S. Government Not a Party)
☒ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN 'X' IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT)
(For Diversity Cases Only)

| | PT | DEF | | PT | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☒ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☒ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE. DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY.)
28 USC Section 1332

## V. NATURE OF SUIT (PLACE AN "X" IN ONE BOX ONLY)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reappointment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Medical Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | | **PROPERTY RIGHTS** | ☐ 450 Commerce/ICC Rates/etc. |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 630 Liquor Laws | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 640 R.R. & Truck | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 650 Airline Regs. | ☐ 840 Trademark | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 660 Occupational Safety/Health | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | ☐ 690 Other | ☐ 861 HIA (1395ff) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☒ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | **LABOR** | ☐ 862 Black Lung (923) | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability | | | ☐ 710 Fair Labor Standards Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 892 Economic Stabilization Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 720 Labor/Mgmt. Relations | ☐ 864 SSID Title XVI | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motion to Vacate Sentence | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 894 Energy Allocation Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | **HABEAS CORPUS:** | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 871 IRS - Third Party 26 USC 7609 | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 440 Other Civil Rights | ☐ 540 Mandamus & Other | | | ☐ 890 Other Statutory Actions |
| ☐ 290 All Other Real Property | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Conditions | | | |

## VI. ORIGIN (PLACE AN "X" IN ONE BOX ONLY)
☒ 1 Original Proceeding
☐ 2 Removal from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
DEMAND $ 1,000,000 plus
CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ YES ☐ NO

## VIII. RELATED CASE(S) IF ANY (See instructions):
JUDGE _____ Docket Number _____

DATE May 3, 2007
SIGNATURE OF ATTORNEY OF RECORD _____
John E. Andrews, Attys. for Plaintiffs

PAID $350 ON 5/4/07 RCPT# 137835

::ODMA\PCDOCS\WORDPERFECT\22816\1 January 24, 2000 (3:10pm)

ORIGINAL

**UNITED STATES
DISTRICT COURT**
SOUTHERN DISTRICT OF CALIFORNIA
SAN DIEGO DIVISION

**# 137835   — BH
* * C O P Y * *
May 04. 2007
11:25:23**

**Civ Fil Non-Pris**
USAO #.: 07-CV-0813 CIV. FILING
Judge..: M. JAMES LORENZ
Amount.:                    $350.00 CK
Check#.: BC# 3534

**Total—>   $350.00**

FROM: RESNICK ET AL V. SHEPARD ET AL
        CIVIL FILING